*Original filed 3/28/07

NOT FOR CITATION

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

JOSE ANGEL RODRIGUEZ,                  )         No. C 05-4560 JF (PR)
                                       )
                    Petitioner,        )         ORDER GRANTING
        vs.                            )         RESPONDENT'S MOTION TO
                                       )         DISMISS
                                       )
EVANS, Warden,                         )
                                       )
                    Respondent.        )
_____)         (Docket No. 7)

        Petitioner, a state prisoner proceeding pro se, seeks a writ of habeas corpus pursuant to

28 U.S.C. § 2254.  The Court dismissed two of Petitioner's claims and ordered Respondent to

show cause why the petition should not be granted as to the remaining claims.  Respondent now

moves to dismiss the petition as untimely.  Petitioner has filed opposition to the motion, and

Respondent has filed a reply.  Based upon the papers submitted, the Court concludes that the

petition is untimely pursuant to 28 U.S.C. § 2244(d) and will grant Respondent's motion.

                                    **BACKGROUND**

        A Santa Clara Superior Court jury convicted Petitioner of two counts of forcible lewd

and lascivious acts upon a child under fourteen, with enhancements for multiple victims (Cal.

Penal Code § 288(b)(1)) and three counts of aggravated sexual assault of a child

(Cal. Penal Code § 269).  On January 7, 2003, Petitioner was sentenced to seventy-five years-to-life in state prison.  Petitioner appealed his conviction.  The state appellate court affirmed the judgment on March 12, 2004.  <u>See</u> Resp. Exh. A (Petition for Review, Attachment A).  The state supreme court denied a petition for review on June 9, 2004.  <u>See</u> Resp. Exh. A.  Petitioner signed the instant petition on October 30, 2005, and it was filed in this Court on November 8, 2005.

**DISCUSSION**

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") became law on April 24, 1996 and imposed for the first time a statute of limitations on petitions for a writ of habeas corpus filed by state prisoners.  Under AEDPA, prisoners challenging non-capital state convictions or sentences must file petitions for relief within one year from the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review.  <u>See</u> 28 U.S.C. § 2244(d)(1)(A).[1]

The one-year period generally will run from "the date on which the judgment became final by conclusion of direct review or the expiration of the time for seeking such review."  28 U.S.C. § 2244(d)(1)(A).  "Direct review" includes the period within which a petitioner can file a petition for a writ of certiorari from the United States Supreme Court, whether or not the petitioner actually files such a petition.  <u>Bowen v. Roe</u>, 188 F.3d 1157, 1159 (9th Cir. 1999).  Accordingly, if a petitioner fails to seek a writ of certiorari from the United States Supreme Court, AEDPA's one-year limitation period begins on the date the ninety-day period defined by Supreme Court Rule 13 expires.  <u>Miranda v. Castro</u>, 292 F.3d 1063, 1065 (9th Cir. 2002) (where petitioner did not file petition for certiorari, his conviction became final ninety days after the California Supreme Court denied review).

Here, the California Supreme Court denied Petitioner's petition for review on June 9, 2004.  <u>See</u> Resp. Exh. A.  Petitioner's conviction became final on September 7, 2004, after the expiration of the ninety-day period within which Petitioner could file a petition for writ of certiorari in the United States Supreme Court.  Accordingly, Petitioner had until

---

[1]In rare instances, not presented by the instant petition, the limitation period may run from a date later than the date on which the judgment became final.  <u>See</u> U.S.C. § 2244(d)(1)(B)-(D).

1  September 7, 2005 to file his federal habeas petition.  The instant petition was deemed filed in

2  this Court on October 30, 2005,[2] a date outside the limitations period.  Accordingly, the instant

3  petition is untimely absent tolling.

4    The one-year statute of limitations is tolled under § 2244(d)(2) for the "time during

5  which a properly filed application for State post-conviction or other collateral review with

6  respect to the pertinent judgment or claim is pending."  28 U.S.C. § 2244(d)(2).  Because

7  Petitioner did not seek collateral review of his conviction, statutory tolling does not apply.

8    Because statutory tolling does not render the petition timely, the Court must decide

9  whether equitable tolling saves the petition.  The Supreme Court has "never squarely addressed

10 the question whether equitable tolling is applicable to AEDPA's statute of limitations," Pace v.

11 DiGuglielmo, 544 U.S. 408, 418 n.8 (2005), but Ninth Circuit authority holds that the one-year

12 limitation period may be equitably tolled because § 2244(d) is a statute of limitations and not a

13 jurisdictional bar.  Calderon v. United States District Court (Beeler), 128 F.3d 1283, 1288 (9th

14 Cir. 1997), cert. denied, 523 U.S. 1, and cert. denied, 523 U.S. 1061 (1998), overruled in part on

15 other grounds by Calderon v. United States District Court (Kelly), 163 F.3d 530 (9th Cir. 1998)

16 (en banc), cert. denied, 526 U.S. 1060 (1999).  Equitable tolling will not be available in most

17 cases because extensions of time should be granted only if "extraordinary circumstances beyond

18 a prisoner's control make it impossible to file a petition on time."  Id. (citation and internal

19 quotation marks omitted).

20   The Ninth Circuit has held that the petitioner bears the burden of showing that this

21 "extraordinary exclusion" should apply to him.  Miranda v. Castro, 292 F.3d 1063, 1065 (9th

22 Cir. 2002).  The petitioner must establish two elements in order to be granted equitable tolling:

23 "(1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance

24 stood in his way."  Raspberry v. Garcia, 448 F.3d 1150, 1153 (9th Cir. 2006) (quoting Pace, 544

25 U.S. at 419); see Pace, 544 U.S. at 419 (petitioner's lack of diligence in filing timely state and

26

27    [2] See Saffold v. Newland, 250 F.3d 1262, 1268 (9th Cir. 2001) (deeming pro se federal

28 habeas petition filed when prisoner signs petition and presumably gives it to prison authorities
for mailing), vacated and remanded on other grounds, Carey v. Saffold, 536 U.S. 214 (2002).

1  federal petitions precluded equitable tolling); <u>Miles v. Prunty</u>, 187 F.3d 1104, 1107 (9th Cir.

2  1999) ("When external forces, rather than a petitioner's lack of diligence, account for the failure

3  to file a timely claim, equitable tolling of the statute of limitations may be appropriate.").  The

4  prisoner also must show that "the 'extraordinary circumstances' were the cause of his

5  untimeliness."  <u>Spitsyn v. Moore</u>, 345 F.3d 796, 799 (9th Cir. 2003) (citations omitted).  Where a

6  prisoner fails to show "any causal connection" between the grounds upon which he asserts a

7  right to equitable tolling and his inability to timely file a federal habeas application, the equitable

8  tolling claim will be denied.  <u>Gaston v. Palmer</u>, 417 F.3d 1030, 1034-35 (9th Cir. 2005) (holding

9  that where prisoner fails to show causal connection between self-representation on direct appeal

10 or physical and mental disabilities and inability to timely file petition, district court's finding that

11 he was not entitled to equitable tolling where he had earlier filed a state habeas petition was not

12 clear error).

13      Whether equitable tolling is in order turns on an examination of detailed facts.  <u>Lott v.</u>

14 <u>Mueller</u>, 304 F.3d 918, 923 (9th Cir. 2002).  <u>See, e.g.</u>, <u>Stillman v. LaMarque</u>, 319 F.3d 1199,

15 1202 (9th Cir. 2003) (finding equitable tolling warranted where prison litigation coordinator

16 promises the prisoner's lawyer to obtain the prisoner's signature in time for filing a petition, but

17 then breaks his promise, causing the petition to be late).  The prisoner must demonstrate

18 reasonable diligence to have the benefit of equitable tolling in these circumstances.  <u>See</u> <u>Guillory</u>

19 <u>v. Roe</u>, 329 F.3d 1015, 1018 (9th Cir. 2003) (finding that petitioner was not reasonably diligent

20 where he waited twenty-seven months to present unexhausted claims to California Supreme

21 Court and seven months after that court's decision to return to federal court).

22      In his opposition to the instant motion, Petitioner contends that he was the victim of

23 ineffective assistance of appellate counsel because counsel did not inform him that there was any

24 judicial remedy beyond his automatic appeal.  In particular, Petitioner claims that his appellate

25 counsel failed to investigate Petitioner's right to file a federal habeas petition and advised him

26 not to pursue his appeal beyond the state supreme court.  <u>See</u> Pet.'s Opp. at 1-2.

27      Because this is a non-capital case, Petitioner was not entitled to counsel in connection

28 with his federal habeas petition.  <u>See</u> <u>Lawrence v. Florida</u>, 127 S. Ct. 1079, 1085 (2007).

The Supreme Court has held that in non-capital cases, an attorney's miscalculation of the limitations period and negligence in general do not constitute extraordinary circumstances sufficient to warrant equitable tolling.  Lawrence, 127 S. Ct. at 1085 (assuming without deciding that equitable tolling applies to § 2244(d)(2); in case where prisoner has no constitutional right to counsel, attorney miscalculation of limitations period not sufficient).  "[T]he right to appointed counsel extends to the first appeal of right, and no further."  Pennsylvania v. Finley, 481 U.S. 551, 555 (1987).  The Sixth Amendment's right to counsel does not apply in habeas corpus actions.  See Knaubert, 791 F.2d at 728.  Where no constitutional right to counsel exists, there can be no constitutional claim for ineffective assistance.  See Coleman v. Thompson, 501 U.S. 722, 757 (1991); see also Bonin v. Calderon, 77 F.3d 1155, 1159-60 (9th Cir. 1996) (claim of ineffective assistance of counsel in state habeas proceedings does not present violation of Sixth Amendment right to counsel or Fourteenth Amendment right to due process where no constitutional right to counsel in such proceedings).

Because he has alleged no facts from which it may be inferred that his appellate attorney in any way impeded or prevented him from filing a timely federal petition or lulled him into believing that such a petition would be filed, Petitioner's case is distinguishable from Spitsyn v. Moore, 345 F.3d 796, 800-01 (9th Cir. 2003) (equitable tolling appropriate where attorney was retained to file and prepare petition, failed to do so, and disregarded requests to return files pertaining to petitioner's case until well after the date the petition was due).  Accordingly, Petitioner is not entitled to equitable tolling for the alleged ineffective assistance of his appellate counsel.

Petitioner has filed a supporting statement of due diligence with his petition.  In his statement, Petitioner alleges that he was waiting for his appellate attorney to turn over his transcripts and files.  He states that after several requests, he received his file on March 20, 2005.  Petitioner alleges that he does not speak English and needed someone to help him understand his transcripts and explain the procedure for filing a petition in this Court.  When Petitioner found a legal assistant inmate to help him, the prison went on lockdown and law library access was limited to "virtually none."  Petitioner states he was about to conclude his research when he was

1  placed in administrative segregation on March "12-05" and his property was taken away from

2  him pending an investigation.  Petitioner was returned to the general population on June 30,

3  2005 and received his property on July 3, 2005.  However, July 12, 2005 the prison again went

4  on lockdown, again limiting Petitioner's access to the law library and ability to speak with his

5  inmate assistant on the progress of his writ.  As noted above, Petitioner did not sign the instant

6  petition until October 30, 2005.  <u>See</u> Petition, Pet.'s Statement of Due Diligence at 1-2.

7      The Court concludes that these alleged circumstances even viewed in the light most

8  favorable to Petitioner, do not establish that Petitioner was unable to file a timely petition.  If in

9  fact he received a copy of his file on March 20, 2005, Petitioner had over six months to prepare a

10  petition.  Petitioner does not identify any facts at issue in the underlying criminal case that were

11  not already known to him after his trial or following the conclusion of his direct appeal.  <u>See,</u>

12  <u>e.g.,</u> <u>United States v. Battles</u>, 362 F.3d 1195, 1198 (9th Cir. 2004) (§ 2255 petition) (even though

13  petitioner did not have access to trial transcripts, the facts supporting claims which occurred at

14  the time of his conviction could have been discovered if he "at least consult[ed] his own memory

15  of the trial proceedings;"  because he did not do so, he did not exercise due diligence and was not

16  entitled to a delayed start of the limitations period under § 2255(4)).  Because Petitioner did not

17  pursue collateral review of his conviction, he could have presented the claims as set forth in his

18  direct appeal, as indeed he has done in the instant petition.

19      Nor are Petitioner's allegations that he does not speak English and sought the assistance

20  of another inmate in preparing his petition an adequate basis for tolling.[3]  In <u>Mendoza v. Carey</u>,

21  449 F.3d 1065, 1070 (9th Cir. 2006), the Ninth Circuit held that "a non-English-speaking

22  petitioner seeking equitable tolling [of the AEDPA limitations period] must, at a minimum,

23  demonstrate that during the running of the AEDPA time limitation, he was unable, despite

24  diligent efforts, to procure either legal materials in his own language or translation assistance

25  from an inmate, library personnel, or other source."

26  \\\

27

28    [3] The Court notes that there is no indication that an assistant prepared the petition or any
pleadings in this action, as only Petitioner's name and signature appears on any of the pleadings.

The petitioner in <u>Mendoza</u> made a much more detailed showing then Petitioner does here.  The record in that case established that when the petitioner was first incarcerated, he requested Spanish legal materials, <u>id.</u> at 1069, but was told he had to wait until he arrived at his assigned prison.  After being transferred to Solano State Prison, he made several visits to the library and found only English legal materials and English-speaking librarians.  It was not until he found a newly-arrived, bilingual inmate willing to offer assistance that he was able to file his habeas petition; by which time the AEDPA deadline had already passed.  <u>Id.</u>  Under these circumstances, the Ninth Circuit determined the petitioner had alleged facts that, if found to be true, would entitle him to equitable tolling.  Accordingly, it remanded so that the district court could hold an evidentiary hearing.  <u>Id.</u> at 1071.

In the instant case, Petitioner alleges only that he does not speak English and had to get someone to help him prepare his petition.  He does not allege that, despite his "diligent efforts," he was unable to secure "legal materials in his own language," or to procure translation help from other "inmates, library personnel or other source."  Nor does he explain how his reliance on his inmate assistant made it impossible for him to file a timely petition.

Petitioner claims that prison lockdowns that limited his access to the law library and his placement in administrative segregation, during which he was deprived of his property from March 2005 to July 2005, also prevented him from filing his petition on time.  Petitioner alleges that he returned to the general population on June 30, 2005 and received his property on July 3, 2005, and that a second prison lockdown occurred between July 12, 2005 and October 13, 2005.  <u>See</u> Petition, Pet.'s Statement of Due Diligence at 2.

Prisoners must be allowed a reasonable amount of time to use the prison law library.  <u>See</u> <u>Lindquist v. Idaho State Bd. of Corrections</u>, 776 F.2d 851, 858 (9th Cir. 1985).  However, the Constitution does not require that such access be unlimited.  Prison officials of necessity must regulate the time, manner and place in which library facilities are used.  <u>Id.</u>  The fact that a prisoner must wait for a turn to use the library does not necessarily mean that he has been denied meaningful access to the courts.  <u>Id.</u>  Moreover, prisoners on lockdown or in the segregated

1  housing unit ("SHU") may face delays in accessing the law library, but so long as the delays are

2  the product of prison regulations reasonably related to legitimate penological interests, such

3  delays are not of constitutional significance, even where they result in actual injury.  Casey v.

4  Lewis, 518 U.S. 343, 361-62 (1996).

5         With respect to Petitioner's claim that he was denied his property while housed in

6  administrative segregation, Respondent concedes that Petitioner was housed in "ad seg" during

7  this time period.  However, Respondent points out that according to prison regulations, Petitioner

8  was allowed two cubic feet of legal materials while he was in administrative segregation.  See

9  Resp. Reply, Exh. B (Decl. of William Sanford) at 2; Exh. 2 (SVSP Administrative Segregation

10 Inmate Personal Property Procedures).  Petitioner does not allege that he was denied access to

11 his legal materials despite his requests, or even that his legal materials were taken from him

12 during this time period.

13        In Espinoza-Matthews v California, 432 F3d 1021, 1027-28 (9th Cir 2005), the Ninth

14 Circuit held that a habeas petitioner was entitled to equitable tolling for the eleven-month period

15 he was denied access to his legal materials despite his repeated requests for them.

16 Espinoza-Matthews was denied access to his legal materials while in administrative segregation,

17 and the materials were returned to him only shortly before AEDPA's limitation period was to

18 expire.  See id.; see also Lott, 304 F. 3d at 921-24 ( granting habeas petitioner equitable tolling

19 for eighty-two days that he was deprived of his legal materials due to two temporary transfers,

20 despite fact that petitioner received materials shortly before the limitation period was to expire).

21 In contrast to Espinoza-Matthews and Lott, Petitioner by his own admission had access to his

22 legal materials not later than July 3, 2005, approximately two months before AEDPA's one-year

23 limitation period was to expire on September 7, 2005.

24        Respondent concedes that the prison was on lockdown between July 12, 2005 and

25 October 13, 2005, but points out that Petitioner has not demonstrated how the lockdown

26 prevented him from filing a timely petition.  Petitioner states that during the lockdown he had

27 limited law library access and could not speak with his "inmate assistant on the progress of his

28 writ."  See Petition, Pet.'s Statement of Due Diligence at 2-3.  However, Petitioner was not

1    denied all access to the law library during the lockdown.  See Resp. Reply, Exh B at Exh. 1.

2    (SVSP Operational Procedure # 21 concerning Administrative Segregation Law Library

3    Services, Lockdown Library Services).  Even during lockdown, prisoners are not prohibited

4    from working on legal matters or from keeping any legal materials in their cells.  Emergency

5    library services are provided via paging if a lockdown or other situation curtails inmate

6    movement for more than ten days.  See id. at 21.

7        Petitioner also fails to explain why he needed access to the law library to present the

8    claims set forth in his petition, which are virtually identical to the claims in his state appellate

9    brief, which he had in his possession.  Moreover, assuming that Petitioner's assistant was taking

10   an active role in preparing the petition, there is no factual showing as to any obstacles to the

11   assistant's.jf efforts during the relevant time period.  While Petitioner did not have immediate

12   access to his assistant, he fails to show why such access was necessary merely to restate the same

13   claims set forth in his state appellate brief.  Petitioner does not assert that he made any

14   unsuccessful requests to use the law library or provide dates on which he was denied access to

15   the law library during this lockdown period.

16       Under all of the circumstances, the Court concludes that Petitioner has not established

17   facts demonstrating he is entitled to statutory or equitable tolling.  Accordingly, the instant

18   petition is barred as untimely pursuant to 28 U.S.C. § 2244(d)(1).

19                                          **CONCLUSION**

20       Respondent's motion to dismiss the petition as untimely (docket no. 7) is GRANTED.

21   The instant petition is DISMISSED pursuant to 28 U.S.C. § 2244(d)(1).  The Clerk shall

22   terminate all pending motions and close the file.

23       IT IS SO ORDERED.

24   DATED:   __3/27/07_____

25                                          _____
                                            JEREMY FOGEL
26                                          United States District Judge

27

28

1

A copy of this order was mailed to the following:

2

3

Jose Angel Rodriguez
4   T-79503
Salinas Valley State Prison
5   P.O. Box 1050
Soledad, CA  93960-1050
6

7

Gregory A. Ott
8   California State Attorney General's Office
455 Golden Gate Avenue
9   Suite 11000
San Francisco, CA  94102-7004
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Order Granting Respondent's Motion to Dismiss
P:\pro-se\sj.jf\hc.05\Rodriguez560mtd                10